**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

———————————————— x

| | |
|---|---|
| David Jackson, individually and on behalf of all others similarly situated, | Case No.: 1:21-cv-04529 |
| Plaintiff, | Honorable Nancy L. Maldonado |
| vs. | |
| Discover Financial Services Inc., | |
| Defendant. | |

———————————————— x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## Introduction

After more than a year of litigation, and as a result of arm's-length negotiations under the supervision of JAMS mediator Bruce A. Friedman, Esq., the parties agreed to resolve this matter under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Discover Bank, erroneously named as Discover Financial Services Inc. ("Defendant" or "Discover"), will create a non-reversionary, all-cash common fund in the amount of $1 million, from which participating Settlement Class Members will receive *pro rata* payments (the "Settlement"). David Jackson ("Plaintiff") and his counsel firmly believe the Settlement is fair, reasonable, adequate, and in the best interest of Settlement Class Members. Accordingly, Plaintiff respectfully requests that this Court enter an order preliminarily approving the Settlement, in the form agreed to by the parties.

## Legal and Factual Background

The TCPA makes it unlawful for "any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Beginning in approximately September 2020, Defendant repeatedly placed calls to Plaintiff's cellular telephone number, delivering a host of prerecorded messages to Plaintiff's cellular telephone in less than a year. And Plaintiff's experience was not unique. Solely as part of settlement discussions, Defendant has identified approximately 93,000 other telephone numbers, dating back to August 2017, to which it may have also delivered prerecorded voice messages even though the call recipients may not have been Discover customers at the time of the call. Defendant denies any wrongdoing and denies that its calls violated the TCPA. Defendant also denies that any class could be certified for litigation purposes, including because it maintains that actual members of the putative class cannot be ascertained, and because common questions of fact and law do not predominate over individual questions. Nonetheless, Defendant recognizes the risk of further litigation, and the parties worked

together with the mediator's assistance to reach a settlement.

## Summary of the Settlement

The Settlement resolves this matter on behalf of the following class ("Settlement Class"):

All persons and entities throughout the United States (1) to whom Discover placed, or caused to be placed by one of its agents or vendors, a call, (2) directed to a telephone number assigned to a cellular service, (3) that used an artificial or prerecorded voice, (4) from August 25, 2017, through the date of the preliminary approval order, (5) where the subject of the call was a credit card account issued by Discover, and (6) where the recipient of the call was not a Discover customer.

To compensate Settlement Class Members, Defendant will create a non-reversionary, all-cash common fund in the amount of $1 million ("Settlement Fund"). Settlement Class Members will receive compensation from the Settlement Fund after first deducting (i) the cost of notice to potential Settlement Class Members, and claims administration, (ii) litigation costs and expenses, for which Plaintiff will petition this Court, (iii) reasonable attorneys' fees, calculated as a percentage of the Settlement Fund, for which Plaintiff will petition this Court, and (iv) an incentive award to Plaintiff, for which he will petition this Court (collectively, the "Settlement Costs").

Each Settlement Class Member who submits a valid, approved claim will be entitled to a *pro rata* share of the Settlement Fund after deducting the Settlement Costs. A third-party class administrator will be responsible for mailing notice of the parties' settlement directly to potential Settlement Class Members, establishing and maintaining a dedicated settlement website where Settlement Class Members may find relevant information and access important case documents, and processing Settlement Class Members' claims and requests for exclusion. To that end, the parties have selected Kroll Settlement Administration ("Kroll") to act as the class administrator here.

Settlement Class Members will be afforded the opportunity to exclude themselves from the Settlement should they choose to do so. Likewise, any Settlement Class Member who wishes to object to the settlement will be provided the opportunity to do so. Upon this Court's entry of a final

judgment, Plaintiff and each non-excluded Settlement Class Member will release certain claims they have relating to calls Defendant made to their cellular telephones.

## Argument

**I.     This Court should certify the Settlement Class under Rule 23 for settlement purposes.**

Plaintiff must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3). And particularly because Plaintiff seeks certification in the context of a settlement, these requirements are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").

### A.   The members of the Settlement Class are sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the class numbers at least 40, joinder is generally considered impracticable." *Simpson v. Safeguard Props., LLC*, No. 13-2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014) (Gottschall, J.);[1] *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Here, while the parties do not know the exact number of Settlement Class Members, Defendant has identified approximately 93,000 telephone numbers that belong to potential Settlement Class Members. While not all of these telephone numbers belong to *bona fide* class members, there can be no doubt that the Settlement Class contains thousands of members, thus satisfying numerosity. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 583 (N.D. Ill. 2018) (Castillo, C.J.) (numerosity for TCPA class where "the class would include thousands of persons"); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 140 (N.D. Ill. 2009)

---

[1]     Internal citations and quotations are omitted, and emphasis is added, unless noted.

(Kennelly, J.) (numerosity met for TCPA class because "[t]he joinder of potentially thousands of plaintiffs—or even hundreds of them—would be impracticable").

### B. Questions of law and fact are common to the Settlement Class.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015). "The test for commonality is not demanding." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998). Certification is appropriate in situations where the "issues involved are common to the class as a whole," and where they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 99 S. Ct. 2545, 2257 (1979). Moreover, as Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

This case presents a host of common questions, as Settlement Class Members' claims stem from the same factual circumstances, in that Defendant made calls to their cellular telephones, using an artificial or prerecorded voice, which are alleged to have violated the TCPA. *See, e.g.*, *Head v. Citibank, N.A.*, 340 F.R.D. 145, 151 (D. Ariz. 2022) (certifying TCPA class and noting a common question: "Did Citibank call someone whom they were not authorized to call, and play a prerecorded voice during that call, in violation of the TCPA?"); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (Feinerman, J.) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."). As a result, Plaintiff satisfies the commonality requirement.

### C. Plaintiff's claims are typical of Settlement Class Members' claims.

Typicality requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Here, Plaintiff and the Settlement Class Members share the same essential claims, as they all received artificial or prerecorded voice calls from Defendant, despite not having a credit card account with Defendant. Plaintiff was harmed in the same way as each member of the Settlement Class, so his claims are typical of the Settlement Class's. *See Wesley v. Snap Fin, LLC*, 339 F.R.D. 277, 292-95 (D. Utah 2021) (certifying "wrong number" class action under the TCPA); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (Kennelly, J.) (typicality satisfied for TCPA class because "the named plaintiffs received the same type of call as the other class members").

### D. Plaintiff and his counsel will continue to fairly and adequately protect the interests of the Settlement Class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class, and that he has no interests antagonistic to those of the class. *See Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04-7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005) (Hart, J.). As set forth above, Plaintiff's claims are aligned with those of the Settlement Class, so he has every incentive to vigorously pursue their claims, as he has done to date. In addition, Plaintiff retained the services of counsel who are well-versed in class action litigation, including nationwide TCPA class actions like this one. *See* Declaration of Michael L. Greenwald, attached as Exhibit A; Declaration of Manuel S. Hiraldo, attached as Exhibit B; Declaration of Ignacio J. Hiraldo, attached as Exhibit C; Declaration of Michael Eisenband, attached as Exhibit D.

What's more, proposed class counsel also satisfy the considerations of Rule 23(g) and should

be appointed accordingly. *See generally* Exs. A-D.

### E. Common questions predominate over any individualized issues.

Rule 23(b)(3) predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, "the common question among class members is whether they received calls fitting the description in the class definition[]." *Birchmeier*, 302 F.R.D. at 253; *see also Gehrich*, 316 F.R.D. at 226 ("common questions [including whether the defendant placed prerecorded calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues"). Moreover, as the class is limited to those who received an artificial or prerecorded voice call but are not customers of Defendant, there are no individualized consent issues that could predominate. *See Birchmeier*, 302 F.R.D. at 253 ("To put it another way, whether a particular defendant is liable is not an *individual* issue among class members. The same applies to defendants' argument that the Court would have to determine whether any defenses apply; they have not persuasively argued that defenses can or would vary among class members.") (emphasis in original).

### F. Class treatment is superior to other available methods for the fair and efficient adjudication of the Settlement Class's claims.

Rule 23(b)(3) additionally requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To do so, a court may consider: (1) the interest of members of the class in individually controlling

the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Green v. Serv. Master On Location Servs. Corp.*, No. 07-4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) (Hibbler, J.) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."). And here, no single class member has an interest in controlling the prosecution of this action because the claims are identical, as they all arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis.

Further, absent a class action, thousands of potential claims like Plaintiff's—all of which stem from Defendant's identical conduct in allegedly calling Settlement Class Members' cellular telephones using an artificial or prerecorded voice—likely will go un-redressed. A class action therefore is the superior method to adjudicate all aspects of this controversy.

### G. As Plaintiff defines the Settlement Class by reference to objective criteria, the Settlement Class is ascertainable.

Because "[t]he criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability," the class is properly defined and ascertainable. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). The proposed class definition identifies a group of individuals allegedly harmed in a particular way, during a specific time period. *See Gehrich*, 316 F.R.D. at 227 ("Given the Seventh Circuit's disavowal of the heightened ascertainability requirement adopted by some other circuits, the class here is easily ascertainable.").

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). While settlements are favored, Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

Then, after concluding its preliminary fairness evaluation, certifying the Settlement Class for settlement purposes, and directing the issuance of class notice, the Court holds a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34.

Correspondingly, preliminary approval requires only that this Court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong*, 616 F.2d at 314. Nonetheless, and with the understanding that a full fairness determination is not necessary at this early stage, the Seventh Circuit has identified a handful of factors to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case

compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires consideration of several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiff's case and the risks inherent in continued litigation and securing class certification favor preliminary approval.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs lay ahead, as the parties vehemently disagreed about the merits of the claims and the propriety of class certification in contested litigation. Absent settlement, Defendant was certain to oppose the certification of any litigation class[2]—as opposed to the Settlement Class here presented—and likely would have opposed summary judgment for Plaintiff and/or sought summary judgment for itself. Trial remained a possibility, and likely appeals thereafter. And Defendant is a large, sophisticated company with highly regarded counsel and ample resources necessary to fight certification, liability, and damage-relate issues through summary judgment, trial, and appellate proceedings.

---

[2] Indeed, certification of a "wrong number" TCPA class over objection was no guarantee. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (declining certification).

Additional litigation would have been costly, time-consuming, and ultimately risky. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (Dow, Jr., J.) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

### B. The stage of these proceedings and experience and views of counsel favor preliminary approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement to further litigation. Early on, Defendant moved to dismiss and to strike class allegations, prompting Plaintiff to twice amend his complaint. The parties then engaged in written discovery targeting Defendant's calling practices and the universe of potential class members, and later agreed to mediate with Bruce A. Friedman, Esq., culminating in the agreement now before this Court.

Plaintiff's counsel bring substantial experience litigating—and resolving—TCPA class actions. *See* Exs. A-D. Counsel and the Court are therefore adequately informed to evaluate the fairness of the settlement. To that end, both Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Accord Swift v. Direct Buy, Inc.*, Nos. 11-401, 11-415, 11-417, 12-45, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("[A]s the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

## C.  The cash relief afforded by the settlement is significant and favors approval.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the Court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, Defendant will pay $1,000,000 into a non-reversionary common fund to resolve this matter. Despite the obstacles Plaintiff faced, he and his counsel negotiated a settlement that aligns with many other TCPA class action settlements nationwide. Specifically, dividing the settlement payment ($1,000,000) by 93,000 (the approximate maximum number of potential Settlement Class Members) amounts to approximately $10.75 per potential Settlement Class Member.[3]

In comparison, other TCPA class actions have settled for significantly less on a per-potential class member basis. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) ($7 per potential class member); *Gehrich*, 316 F.R.D. at 227-28 (just over $1 per person); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (Holderman, J.) (less than $5 per person).[4]

---

[3]     The parties believe the true number of Settlement Class Members is less than 93,000, meaning the true per-Settlement Class Member recovery is more than $10.75.

[4]     *See also Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

11

And on a per-claimant basis, the Settlement recovery is expected to be on par with other recently approved TCPA class action settlements. Plaintiff's counsel estimates—based on the likely number of *bona fide* Settlement Class Members[5]—that after deducting the Settlement Costs, participating Settlement Class Members each will receive between $40 and $110. *Accord Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (Chang, J.) (approximately $45); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (Holderman, J.) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action).

The court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-TCPA claimant recovery as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017). The same is true here.

### D. The remaining Rule 23(e)(2) factors support preliminary approval.

Finally, consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

---

[5] Because this case involves calls to alleged wrong numbers, the true number of Settlement Class Members who received calls from Discover despite not having an account, is unknown. For this reason, Settlement Class Members must submit a short, straightforward claim form to participate in any recovery.

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[6] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as whether the proposal was negotiated at arm's length, and whether the relief provided to the Settlement Class is adequate—are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members, staying updated on the case through regular discussions with his counsel. *See* Ex. A at ¶¶ 43-46. He reviewed his pleadings, responded to written discovery requests, attended mediation, and made all necessary decisions required of him in the best interests of Settlement Class Members. *Id*.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. According to the Advisory Committee's Note, courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

To that end, all Settlement Class Members have the same legal claims, and each participating Settlement Class Member thus will be treated equitably, as he or she will receive an equal portion of the $1 million common fund after deducting the Settlement Costs. Moreover, the release affects each Settlement Class Member in the same way, as everyone will release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the

---

[6] The only operative agreement between the parties is the Settlement Agreement, which is attached as Exhibit E. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

III. **The proposed notice program is standard in TCPA class actions like this one and complies with Rule 23.**

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, Kroll. Through the notice program, Kroll will use all reasonable efforts to provide direct mail notice to potential Settlement Class Members, in the forms attached as exhibits to the Settlement Agreement. *See* Ex. E.

To start, Kroll will perform a reverse lookup process for those telephone numbers identified by Defendant, to identify names and addresses of potential Settlement Class Members. Upon receipt of contact information for potential Settlement Class Members, Kroll will run that information through the National Change of Address system, which updates addresses for all people who submitted a change of address with the U.S. Postal Service within the past four years. Kroll will then send direct mail notice by email or by postcard, with a detachable claim form, to potential Settlement Class Members, where possible.

Separately, Kroll will establish a dedicated settlement website where Settlement Class Members can review relevant documents and submit claims. To submit a valid claim, a Settlement Class Member must state that he or she received one or more prerecorded voice calls from Defendant

on his or her cellular telephone during the class period, and that he or she does not have an account with Defendant. In addition, Kroll will establish a toll-free telephone number where potential Settlement Class Members may obtain information about the Settlement.

The ultimate goal of the notice program is to make it as convenient as possible for deserving Settlement Class Members to learn of, and participate in, the Settlement. *See, e.g.*, *Williams*, 2019 WL 1450090, at *5 (approving similar notice plan in a TCPA class action). The subject notice program, therefore, complies with Rule 23 and due process. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Bonoan v. Adobe, Inc.*, No. 19-1068, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website.").

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order—agreed to by the parties—certifying the Settlement Class for settlement purposes; preliminarily approving the Settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative and Plaintiff's counsel as class counsel; approving and directing notice to Settlement Class Members in the form provided in the parties' Settlement Agreement; and setting a final fairness hearing.

Dated: December 1, 2022

/s/ *Michael L. Greenwald*
Michael L. Greenwald (*pro hac vice*)
Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
mgreenwald@gdrlawfirm.com
aradbil@gdrlawfirm.com

Ignacio J. Hiraldo
IJH LAW

1200 Brickell Avenue, Suite 1950
Miami, Florida 33131
(786) 496-4469
ijhiraldo@ijhlaw.com

Manuel S. Hiraldo
HIRALDO P.A.
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
(954) 400-4713
mhiraldo@hiraldolaw.com

Michael Eisenband
EISENBAND LAW, P.A.
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
(954) 533-4092
MEisenband@Eisenbandlaw.com

*Counsel for Plaintiff and the proposed settlement class*